IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNIVERSITY OF IDAHO, et al., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>GREAT AMERICAN INSURANCE )<br>COMPANY, INC., )<br>)<br>)<br>Defendant. )<br>) | CASE NO. CV 05-220<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## **INTRODUCTION**

Plaintiffs University of Idaho, through its Board of Regents (the "University") and the University of Idaho Foundation, Inc. (the "Foundation") (collectively "Plaintiffs") filed this action against Defendant Great American Insurance Company, Inc. ("Great American") for breach of insurance contract. Great American removed the actions to this Court pursuant to 28 U.S.C. § 1446 alleging 28 U.S.C. § 1332(a) as the sole grounds for removal. The matter is presently before the Court on the University of Idaho's Motion to Remand (Docket No. 6), filed on June 28, 2005. The Court will grant the University's Motion to Remand this matter to state court.

**Memorandum Decision and Order - Page 1**

# I.
# Background

Plaintiffs filed this action in the District Court of the Fourth Judicial District for the State of Idaho for the County of Ada, alleging only a state law breach of contract claim. On May 31, 2005, Defendant Great American removed the matter to this Court based on diversity jurisdiction. The University moves to remand the action to state court, alleging that it is protected by its sovereign immunity under the Eleventh Amendment of the U.S. Constitution from being haled into federal court. It also maintains it is not a "citizen" for purposes of diversity jurisdiction.

# II.
# Discussion

"The jurisdictional structure at issue in this case has remained basically unchanged for the past century." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7 (1983). Subject to certain exceptions not applicable here, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The district courts of the United States have "original jurisdiction" for claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In addition, a federal court may assert original jurisdiction based upon "diversity," which exists when the matter in controversy is between "citizens of different States." 28 U.S.C. 1332(a)(1). If the district court at any time determines that it lacks jurisdiction over the removed action, it must remedy the improvident grant of removal by remanding the action to state court. 28 U.S.C. § 1447; *see ARCO Envtl. Remediation,*

*LLC v. Dep't of Health and Envtl. Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000).  The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

### A. Eleventh Amendment Immunity

The University argues that the Eleventh Amendment sovereign immunity bars removal of its lawsuit to the federal courts despite its status as a plaintiff in this action, rather than a defendant.  The University maintains that the principles of sovereign immunity have expanded to such an extent to prohibit a defendant from forcing a plaintiff state, voluntarily prosecuting a claim in state court, into a federal forum by virtue of the federal removal statute.

Yet, the Ninth Circuit has explicitly held that "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction." *California ex rel Lockyer v. Dynegy, Inc.*, 375 F.3d 966 (9th Cir. 2004).  In *Dynegy,* the defendants removed the matter to federal court based on the applicability of federal law.  The State of California sought to remand the case to state court based on its assertion that Eleventh Amendment immunity protects a state from removal to federal court.   After conducting an extremely thorough analysis of the history of the Eleventh Amendment, the *Dynegy* court disagreed.  It concluded that "sovereign immunity was never intended to protect *plaintiff* states...[r]ather, it plainly understands sovereign immunity as protection from *being sued.*" 375 F.3d at 847 (emphasis in the original).  In accordance with the clear directive of the Ninth Circuit, assuming the University of Idaho enjoys Eleventh Amendment immunity, it does not bar its removal to federal court.

**Memorandum Decision and Order - Page 3**

**B. Citizens of Different "States"**

While the *Dynegy* clearly prohibits plaintiff states from seeking relief from the federal removal statute based on Eleventh Amendment sovereignty, it does not abrogate the clear burden of a defendant removing an action into federal court to assert a proper basis for federal jurisdiction. In the instant case, Great American asserts jurisdiction based on solely on diversity, unlike *Dynegy*, where jurisdiction was based on claims arising under federal law.

Although this distinction does not disturb the basis tenet touted by the Ninth Circuit–that a plaintiff state may not invoke the protection of Eleventh Amendment to bar its removal into federal court, it does require Great American to prove that the matter in controversy is between citizens of different states. This distinction is significant because in an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 716 (1973). Likewise, state agencies that are the alter ego of the state are not citizens for the purposes of diversity jurisdiction. *Id.* On the other hand, if the agency is an independent one, separate and distinct from the state, the district court can properly proceed to the merits. The University of Idaho claims it is an arm or alter ego of the State of Idaho, and, thus, is not a citizen for diversity purposes.

In determining whether the agency is an alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit. *See Moor*, 411 U.S. at 716; *Ronwin v. Shapiro,* 657 F.2d 1071, 1073 (9th Cir. 1981). If the agency's status is unclear, the court must look to any and all available sources for guidance. "Although a number of factors may be considered, a crucial question in determining whether the suit should

be regarded as one against the state is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury." *Ronwin v. Shapiro,* 657 F.2d at 1073. Other significant factors include whether the defendant entity performs an essential government function and the manner in which the entity is regarded by the law of the relevant state. *Hutchison v. Lake Oswego School District No. 7*, 519 F.2d 961, 966-998 (9th Cir. 1975). Whether state law treats the entity as the state, permits it to sue and be sued, permits it to take property in its own name, or permits it to conduct itself substantially independently of the state are relevant aspects of the state law that must be considered. *Id.*

In a typical situation, some factors will suggest that the agency is a "citizen" while others will just as strongly suggest that the agency is merely an alter ego of the state. The court must balance these against each other in reaching its conclusion. It must never, however, lose sight of the primary question involved: whether the state is the real party in interest in the lawsuit nominally brought [by or] against the agency. Following *Moor*, courts have held that each state university must be evaluated in light of its unique characteristics to determine its status as a citizen for diversity purposes. *University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1204 (1st Cir. 1993); *see also University System of New Hampshire v. United States Gypsum Co.,* 756 F.Supp. 640, 645 (D.N.H. 1991).

The University claims that this Court has already determined that University of Idaho is an arm of the state for purposes of jurisdictional analysis. *See Mazur v. Hymas*, 678 F.Supp. 1473 (D.Idaho 1988). In *Mazur,* upon taking judicial notice of the fact that a substantial portion of the University of Idaho's funding comes from appropriations by the State Legislature, the court reasoned that a judgment against the University of Idaho would sufficiently impact the

**Memorandum Decision and Order - Page 5**

state treasury as to bring the University within the protection of the Eleventh Amendment. 678 F.Supp. at 1476, *citing Ferguson v. Greater Pocatello Chamber of Commerce, Inc.,* 647 F.Supp. 190, 192 (D.Idaho 1985)(suit against Idaho State University is a suit against the State of Idaho for purposes of sovereign immunity because a judgment against Idaho State University would directly impact the state treasury). Accordingly, the district court held that the University of Idaho is an instrumentality of the state, and, thus, federal jurisdiction was barred by the Eleventh Amendment. *Id.* at 1476. In reaching this conclusion, the the *Mazur* court expressly overruled a previous Idaho case, *Phoenix Lumber Co. v. Regents of the University of Idaho*, 197 F. 125 (D.Idaho 1908), to the extent that it held that a suit against the Regents of the University of Idaho is not a suit against the state under the Eleventh Amendment because it was designated a body corporate under state statute.

   Despite the explicit holding of the *Mazur* court that the University of Idaho shall be considered an arm of the state, Great American urges the Court not to consider *Mazur* as controlling because *Mazur* only discusses whether the University of Idaho is entitled Eleventh Amendment immunity, and not whether it should be considered a citizen for diversity purposes. While diversity jurisdiction may"present[] a problem which is separate and distinct from the immunity of the state under the Eleventh Amendment," *Delong Corp. v. Oregon State Highway Comm'n*, 233 F.Supp. 7, 10 (D.Or. 1964), a similar rule controls the determination of whether a state is immune from suit under the Eleventh Amendment or whether diversity jurisdiction exists when individual state officers or agencies are named in lieu of the state. *Id.; see also Ronwin v. Shapiro,* 675 F.2d 1071, 1071 (noting that whether the state is the real party in interest is the primary question to be resolved when determining whether a particular entity can invoke

**Memorandum Decision and Order - Page 6**

sovereign immunity under Eleventh Amendment, while recognizing that "a similar rule controls the determination of diversity jurisdiction").  Other circuits have come to a similar conclusion.  In essence, the two tests present the same ultimate question for decision: whether the state remains the real party in interest notwithstanding another agency or official's designation as the nominal plaintiff .  *See, e.g., University of Rhode Island*, 2 F.3d at 1204 ("Several ancillary principles derive from *Moor*.  The criteria are substantially similar for evaluating whether an entity is a citizen of the state for diversity purposes, or a state for Eleventh Amendment sovereign immunity purposes."), *citing Northeast Fed. Credit Union v. Neves*, 837 F.2d 531, 534 (1st Cir. 1988) (tests "pretty much the same"); *see also Kovats v. Rutgers*, 822 F.2d 103, 1307 (3d Cir. 1987), *cert. denied,* 390 U.S. 1014 (1989); *Jagnandan v. Giles*, 538 F.2d 1166, 1773 (5th Cir. 1976), *cert. denied*, 432 U.S. 910 (1977); *Krieger v. Trane Co.,* 765 F.Supp. 756, 757-758 (D.D.C. 1991).

In light of the similarities between the tests for diversity and immunity, the Court finds the *Mazur* holding apposite to issue presented in this case.  Although the *Mazur* court's reliance on the fact that a substantial portion of the University's budget comes from state funds as the basis of its analysis that the University should be afforded the protection of the Eleventh Amendment would seem inapplicable to the circumstances of this case because the University is the plaintiff, the question whether a money judgment against a state instrumentality or official would be enforceable against the state is of considerable importance to any evaluation of the relationship between the state and the entity or individual being sued.  *Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30, 45-51 (1994); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464 (1945).   This principle

**Memorandum Decision and Order - Page 7**

holds true even if the state will *not* be forced to pay funds from the state treasury as a result of the lawsuit. *See Doe v. Regents of the University of California,* 519 U.S. 425 (1997)(rejecting plaintiff's arguments that the University of California should not be considered an arm of the state for Eleventh Amendment sovereignty purposes because the Department of Energy agreed to indemnify the University for any liability, thereby ensuring that the state treasury would not be adversely effected as a result of the lawsuit); *see also Markowitz v. United States*, 650 F.2d 205 (9th Cir. 1981) (finding the fact that such funds may have been derived from insurance proceeds did not alter the conclusion that the funds to be used were state funds). As the University notes, any recovery in the case *sub judice* will benefit the State of Idaho, as it will not have to increase its appropriations to the University to compensate for the losses incurred that the University alleges should have been covered by the insurance policy purchased from Great American, strongly suggesting that the State of Idaho is the real party in interest.

In addition to the prior decisions issued by this Court finding the state universities in Idaho to be arms of the state, other factors support a finding that the University is an arm or alter ego of the State of Idaho. The University serves the essential government function of providing public education. I.C. § 33-3803 (The University's Board of Regents is a "government instrumentality for the dissemination of knowledge and learning."). In addition, the Board of Regents acts in concert with the State Board of Education to govern and control all state education throughout the *entire* State of Idaho. When an entities power is not centralized to a small locality, but rather applies to the entire state, this tends to prove it is an arm of the state. *See, e.g., Kashani v. Purdue University,* 813 F.2d 843, 847-48 (7th Cir. 1987), *cert denied,* 484 U.S. 846 (1987). Furthermore, the University does not have the power to levy taxes and it

requires approval from the legislature before it can make any expenditures using state funds to construct or repair facilities. I.C. § 33-3805A. *Id.* (" The absence of the power to tax is a strong indication that an entity is more like an arm of the state than like a county or city, because that enablement gives an entity an important kind of independence. The absence of that authority, for an entity like Purdue, ensures ultimate fiscal reliance upon the state.").

The structure of the Board of Regents further supports the conclusion that the University is the *alter ego* of the State. The Board is a nine member entity, eight of which are appointed directly by the governor. I.C. § 33-102. The remaining member, the Superintendent of Public Instruction, is directly elected and serves solely as an *ex officio* member. I.C. § 67-1501. The Ninth Circuit has previously held that such a statutory scheme where eight members of the Board are appointed by the governor, with two elected officials acting *ex officio*, is persuasive evidence that a state university, acting through its Board of Regents, is an arm of the state. *See Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1349 (9th Cir. 1981); *see also Kashani*, 813 F.2d at 847 ("Very significant in considering whether Purdue has sufficient autonomy from the State of Indiana to be considered more like a county or city than like an arm of the state is the fact that the majority of the members of Purdue's governing council, the Board of Trustees, are selected by the Governor of Indiana."), *citing, Harden v. Adams,* 760 F.2d 1158, 1163 (11th Cir.), *cert. denied*, --- U.S. ----, 106 S.Ct. 530 (1985) ("Troy State University is subject to substantial state control; its Board of Trustees ... is composed in part of state officials and in part of gubernatorial appointees.").

Although the legislative system in Idaho permits the Board of Regents to carry on some entrepreneurial activities without specific legislative approval, such as selling, holding, or

**Memorandum Decision and Order - Page 9**

dealing in property, the University is still dependent largely upon appropriations from Idaho's general fund. The degree of autonomy granted is not sufficient to overcome the significant control retained by the legislature and the constitutional directive imposed at the time of the University's creation. In addition, the fact the University has the power to sue and be sued has lost its import as persuasive evidence of a university's status as independent from or an alter ego of the state. *Ferguson,* 647 F.Supp. at 192-193 (finding that a statute declaring Idaho State University to be a body politic and corporate, with its own seal and having power to sue and be sued in its own name did not destroy its status as an arm of the state and did not signify a waiver of its immunity under the Eleventh Amendment).

The Court's decision is consistent with other circuits that have addressed the question of whether a state university is an arm of the state. The majority of cases addressing the question have held that these institutions are arms of their respective state governments. In fact, the court in *University of Tennessee v. United States Fidelity Company* noted the plaintiff's presentation of a "listing of 77 reported cases in which courts have held that universities were entitled to be considered as an agency or alter ego the state ... as opposed to nine reported cases against such a finding .... and the fact that, since 1980, the trend has increased with 49 reported cases finding in favor of the alter ego status and three against." 670 F.Supp. 1379, 1387 (1987) (holding that the University of Tennessee as arm or alter ego of the state, and thus was not a citizen for federal diversity purposes).

Nor has Great American shown that earlier decisions regarding the proper status of the Board of Regents should not be followed. Therefore, given the *Mazur* court's holding that the University of Idaho falls within the protection of the Eleventh Amendment as an instrumentality

**Memorandum Decision and Order - Page 10**

of the state, and findings its reasoning in line with substantial precedent, the Court will consider the University an arm of the State of Idaho for diversity purposes. As a result of this finding, the Court concludes that the removal of this matter to this Court was improper and orders that it be remanded.

## **ORDER**

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that** the University of Idaho's Motion to Remand is GRANTED.

**IT IS FURTHER ORDERED that** this matter be remanded to the Fourth District for Judicial District for the State of Idaho for the County of Ada.



DATED: September 26, 2005

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 11**